UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————— x

       :
       :     ___ CIV. ____ (__) (__)
BARSTOOL SPORTS, INC.,   :
       :     **COMPLAINT**
          Plaintiff,   :
       :     **Jury Trial Demanded**
       -against-   :
       :
OMEGA ACCOUNTING SOLUTIONS,   :
INC.; O'BRIEN SALES & MARKETING,   :
INC.,   :
       :
         Defendants.   :
       :

—————————————————— x

       Plaintiff Barstool Sports, Inc. ("Barstool"), by its undersigned attorneys, Law Offices of

David C. Berg, as and for its Complaint against Defendants Omega Accounting Solutions, Inc.

("Omega") and O'Brien Sales & Marketing, Inc. ("O'Brien" and collectively referred to with

Omega as "Defendants"), alleges upon personal knowledge as to its own status and acts, and

upon information and belief as to all other matters, as follows:

I.      <u>**NATURE OF THE ACTION**</u>

       1.  This action arises out of Defendants' failure to pay Barstool over $4.2 million that

they contractually owe.  Barstool provided valuable advertising and sponsorships to the

accounting firm Omega.  Omega reaped the benefits of this partnership yet failed to pay Barstool

over $3.2 million that it owes.  Omega's advertising agency, O'Brien, misappropriated over $1

million that it was contractually obligated to pay Barstool.  Defendants' refusal to honor their

contractual commitments has left Barstool with no choice but to file this lawsuit.

## II.     JURISDICTION AND VENUE

2.  The Court has jurisdiction over the controversy under 28 U.S.C. § 1332(a)(l).

3.  The amount in controversy exceeds $75,000.00.

4.  There is complete diversity of citizenship between the parties and thus the District Court has original jurisdiction.

5.  Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because the acts that give rise to Barstool's claims occurred in this district, and Barstool's principal place of business is in this district.

6.  Jurisdiction and venue are also appropriate because, as set forth below, the agreement at issue is governed by the laws of the State of New York, and the parties agreed that any litigation arising in connection with the agreement "will be brought solely in New York, and the parties consent to the jurisdiction of such courts."

## III.     THE PARTIES

7.  Barstool is a Delaware corporation with its principal place of business in New York, New York.

8.  Omega is a California corporation with its principal place of business in Orange County, California.

9.  O'Brien is a California corporation with its principal place of business in Orange County, California.

## IV.     SUMMARY OF RELEVANT FACTS

### A.     Looking to Grow its Brand, Omega Decides to Partner with Barstool.

10.  Barstool is a media company with a devoted audience.  Barstool partners with many brands who advertise on and sponsor its content.  Most of these brands are repeat clients who

value and renew their partnerships with Barstool.

11.  Omega is an accounting company that charges a commission to help obtain a refundable tax credit (the Employee Retention Credit program or "ERC") for businesses that continued to pay employees while shut down due to the pandemic.  Omega's founder and president, Jay Woods ("Woods"), referred to ERC credits as a "gold rush" that would cause Omega's revenue to skyrocket.[1]

12.  As part of its plan to expand from a regional to national brand, Omega approached O'Brien, a media buyer and sports marketing agency, to act as its advertising agency.  Omega and O'Brien entered a written commission agreement in July 2022.

13.  O'Brien raised with Omega the possibility of partnering with Barstool.  Omega seized this opportunity.

14.  Barstool and Omega entered a media buy and sponsorship agreement from September to December 2022.  Omega authorized O'Brien to sign this agreement as its agent, on Omega's behalf, and with Omega's knowledge, authority and consent.  The media buy was a success, and Omega paid Barstool the $300,000 it owed thereunder in full.

**B.    Omega Expands its Relationship with Barstool, Entering into a Media Buy and Sponsorship Agreement Whereby Omega Agrees to Pay Barstool Six Million Dollars.**

15.  Given the success of its first media buy with Barstool, Omega sought to expand its relationship with Barstool.  On or around December 9, 2022, the parties entered an agreement (known in advertising as an "insertion order" or "IO"), titled "Omega Accounting Solutions 2022-2023 IO," whereby Omega would exclusively partner with Barstool on various events and

---

[1] Peter J. Brennan, "Accounting Firm Omega Sees Revenue Climb," Orange Cnty. Bus. J. (Mar. 13, 2023).

advertise on and sponsor Barstool content through 2023 in exchange for Omega paying Barstool $6 million in four quarterly payments of $1.5 million (the "Agreement" or "IO," a true and correct copy of which is attached hereto as Exhibit A). Omega authorized O'Brien to sign the Agreement as its agent, on its behalf, and with its knowledge, authority and consent. This is reflected by, among other things, a December 8, 2022 email exchange in which O'Brien sent Omega's CEO Woods a copy of the Agreement, and Woods responded to O'Brien that same day: "Approved." A true and correct copy of this email is attached hereto as Exhibit B.

16. In the Agreement, O'Brien, as Omega's disclosed agent/advertising agency, agreed (on Omega's behalf) that in exchange for the payments due to Barstool for the period from approximately December 1, 2022 through December 31, 2023, Omega would advertise on and sponsor various Barstool content and live shows, including as Barstool's "Marquee Partner," "Exclusive Partner," and "Presenting Sponsor," all as expressly particularized on the IO (the "Deliverables"). For example, Omega would be the Marquee Partner for the Barstool Sports Arizona Bowl (a college football bowl game), Barstool's Rough N' Rowdy amateur boxing contests, and for content and live shows that Barstool created in connection with the 2023 Superbowl and the 2023 Final Four/March Madness.

17. The Agreement states under the heading "TIMING/BILLING" that "[a]ll payments are due net 30 days after invoice date." (Ex. A.) The Agreement states under the same heading: "If [Omega's] account is past due or if [Omega] is in breach of this IO, [Barstool] may suspend performance and/or may require prepayment with respect to future IOs." (*Id.*)

18. The Agreement states under the heading "CANCELLATION" that "[a]ll of the following deal types and media benefits are non-cancelable" by Omega: "(i) any sponsorship; (ii) any Custom Material or other custom advertising content; and (iii) any deal that grants any form

of exclusivity or exclusive right to [Omega] (in which case the entire IO will be non-cancelable by [Omega])." (*Id.*)  The Agreement also states under this heading that: "If this IO is terminated or canceled by [Barstool] due to [Omega's] uncured breach . . . then all fees set forth in this IO will immediately become due and payable." (*Id.*)

19.  The Agreement states under the heading "LIVE EVENTS": "If a specific benefit becomes unavailable, [Barstool] will use reasonable efforts to replace such benefit with an available benefit or makegood of commensurate value." (*Id.*)  The Agreement also states that: "In the event of under-delivery, [Omega's] <u>sole</u> remedy will be a <u>makegood</u> of media benefits determined by the parties in good faith, of a value commensurate with that of the under-delivery, which may run during or after the period set forth in this IO." (*Id.* (emphasis added).)

20.  The Agreement states that it "is subject to the IAB/AAAA Standard Terms and Conditions for Internet Advertising (version 3.0)" (the "IAB Terms and Conditions"). (*Id.*)  A true and correct copy of the IAB Terms and Conditions is attached hereto as Exhibit C.

21.  The Agreement states: "Section XIV(d) of the IAB [Terms and Conditions] is amended to stipulate 'New York' in each blank field." (Ex. A.)

22.  Section XIV(d) of the IAB Terms and Conditions, as amended by the Agreement, states that "[a]ll IOs will be governed by the laws of the State of New York," and that the parties "agree that any claims, legal proceedings, or litigation arising in connection with the IO (including these Terms) will be brought solely in New York, and the parties consent to the jurisdiction of such courts." (Ex. C.)

23.  Section V(a) of the IAB Terms and Conditions states: "Unless designated on the IO as non-cancelable, [Omega] may cancel the entire IO, or any portion thereof[.]" (*Id.*)  As Section V(a) reflects, if an IO is designated as non-cancelable (which is the case here), then an advertiser

cannot cancel the entire IO or any portion thereof.

24. Section III(c) of the IAB Terms and Conditions states:

> Payment Liability. Unless otherwise set forth by [O'Brien] on the IO, [Barstool] agrees to hold [O'Brien] liable for payments solely to the extent proceeds have cleared from [Omega] to [O'Brien] for Ads placed in accordance with the IO. For sums not cleared to [O'Brien], [Barstool] agrees to hold [Omega] solely liable. [Barstool] understands that [Omega] is [O'Brien's] disclosed principal and [O'Brien], as agent, has no obligations relating to such payments, either joint or several, except as specifically set forth in this Section III(c) and Section X(c). [O'Brien] agrees to make every reasonable effort to collect and clear payment from [Omega] on a timely basis. (*Id.*)

25. Section X(c) of the IAB Terms and Conditions states in relevant part:

> [O'Brien] represents and warrants that it has the authority as [Omega's] agent to bind [Omega] to these Terms and each IO, and that all of [O'Brien's] actions related to these Terms and each IO will be within the scope of such agency. [O'Brien] will defend, indemnify, and hold harmless [Barstool] and each of its Affiliates and Representatives from Losses resulting from (i) [O'Brien's] alleged breach of the foregoing sentence[.] (*Id.*)

**C.    Barstool Performs its Obligations Under the Agreement.**

26. Barstool performed all its obligations under the Agreement for the period through September 2023 by providing Omega with all the Deliverables (*i.e.*, the agreed-upon partnership, sponsorship and advertising opportunities) for that period.  For example:

a.  Omega was the "marquee partner" of the Barstool Sports Arizona Bowl, a college football bowl game that was played and broadcast on December 30, 2022:



b.  Omega was featured as a sponsor on popular Barstool content, including episodes of "Pardon My Take" (one of the top sports podcast in the country) and its "Sundae Conversation" videos (interviews of celebrities that have garnered millions of views):



27.  Barstool also went above and beyond its obligations under the Agreement in promoting Omega and its CEO Woods.  For example:

a. Barstool joined in a press release announcing its partnership with Omega even though this was not required by the Agreement and is something Barstool rarely does for advertising partners.

b. On December 22, 2022, Woods appeared as a guest on an episode of the Barstool podcast "Token CEO," hosted by Barstool's then-CEO Erika Ayers Badan, titled "Why Advertisers Like Partnering With Barstool Sports."[2]  It was one of the first times (if not the first time) that Barstool had a representative of an advertiser as a guest on one of its podcasts.  During the interview, Woods discussed at length the services Omega provided.  Barstool did this as an "extra" for Omega, which it believed was a valued partner.  Omega posted an article to its website promoting Woods' appearance, embedding the video of the podcast in the article.[3]

c. On March 21, 2023, Woods appeared as a guest on another popular Barstool podcast, "Million Dollaz Worth of Game," which has over 1.7 million subscribers on YouTube.[4] During the interview, Woods discussed at length the services Omega provided.  Again, this was an extra that Barstool provided Omega because it believed Omega was a valued partner.

d. Barstool accommodated Omega's requests to replace certain deliverables with other items during the Agreement.

28.  Omega was aware of the services that Barstool was providing and did not contemporaneously claim that they were outside the scope of the Agreement or that O'Brien did

---

[2] "Why Advertisers Like Partnering With Barstool Sports," Token CEO Podcast, YouTube (Dec. 22 2022).

[3] Timothy Gibson, "Omega's Jay Woods Appears on Barstool Token CEO Podcast," Omega (Feb. 2, 2023).

[4] "How Small Businesses Work with Omega," Million Dollaz Worth of Games Podcast, YouTube (Mar. 21, 2023).

not have authority to enter the Agreement on behalf of Omega.  To the contrary, after the parties

executed the Agreement, Omega publicly promoted its partnership with Barstool.  For example:

      a.  In a February 2023 article on its website depicting an image of Woods on the

"Token CEO" podcast, Omega stated that it had decided to partner with Barstool because

Barstool is "one of the most influential lifestyle and sports media companies in America," and

Omega "hopes to reach a new audience of small business owners and spread ERC credit

awareness around the benefits of the payroll tax program:"[5]



In the article, Woods stated: "When the pandemic hit, Barstool Sports took a stand for small

businesses, making a monumental impact.  As a small business champion, we are on a mission to

help owners across America qualify for this generous tax credit, and aligning with Barstool

---

[5] Timothy Gibson, "Omega Partners with Barstool Sports to Raise ERC Credit Awareness,"
Omega (Feb. 1, 2023).

Sports gives us a big megaphone to do exactly that."

   b. Similarly, on April 10, 2023, Omega posted to social media about how it had

attended a Barstool event during the Final Four, and thanked a Barstool personality for

"promoting our message":



///

///

///

///

///

///

///

c. Omega continues to host a webpage promoting its partnership with Barstool to solicit potential clients to claim an ERC credit:



On the website, Omega prominently features Barstool's logo, promotes Barstool and two Barstool podcasts in the "AS SEEN ON" section, and uses the first name of Barstool's founder and owner, Dave Portnoy, as the last four digits of the phone number for potential clients to call Omega. The website states "GET BARSTOOL SPORTS' FOUNDER DAVE PORTNOY'S TAKE ON OMEGA" and embeds a video posted on Omega's YouTube account that compiles examples of Omega being prominently promoted on Barstool content.

**D.** **Defendants Do Not Pay What They Contractually Owe.**

29. Even though Barstool performed all of its obligations under the Agreement for the period through September 2023 by providing Omega all the required Deliverables due under the Agreement for that period, Defendants did not comply with their obligation to pay.

30. In accordance with Section III(a) of the IAB Terms and Conditions, Barstool sent O'Brien (as Omega's advertising agency) invoices totaling $4,721,452 to be paid to Barstool for the services Barstool performed under the Agreement in timely providing the Deliverables for the period from December 2022 through September 2023 in accordance with the Agreement.[6] Barstool is informed and believes, and based thereon alleges, that O'Brien sent invoices to Omega to pay these amounts.

31. On February 8, 2023, O'Brien wired Omega $1,764,705.88, with $1.5 million to be paid by O'Brien to Barstool and the remaining $264,705.88 to be paid as a commission to O'Brien. Yet in breach of the Agreement, including Sections III(b) and (c) of the IAB Terms and Conditions, O'Brien did not pay Barstool the $1.5 million. Instead, O'Brien only paid Barstool $425,507.84 ($13,203.92 on April 11, 2023, $362,303.92 on May 2, 2023, and $50,000 in September 2023), failing without any justification to pay Barstool the outstanding $1,074,492.16. There is no dispute that O'Brien owes Barstool $1,074,492.16.

32. Other than the February 8, 2023 wire, Omega did not pay any of the outstanding invoice amounts owed to Barstool in breach of Section III(c) of the IAB Terms and Conditions. Therefore, in total, Omega still owes Barstool at least $3,221,452 under the Agreement.

---

[6] Barstool sent O'Brien at least the following invoices for its services under the Agreement: (a) a December 31, 2022 invoice in the amount of $1,721,452 (#INV_BSS_22997); (b) a January 31, 2023 invoice in the amount of $1.5 million (#INV_BSS_23821); and (c) a March 31, 2023 invoice in the amount of $1.5 million (#INV_BSS_25663). True and correct copies of these invoices are attached hereto as Exhibit D.

33.  After accounting for the $425,507.83 that it received, Barstool is still owed at least $4,295,944.16 under the Agreement based on the above-alleged invoiced amounts: $3,221,452 is due from Omega, and $1,074,492.16 from O'Brien.

34.  On or around September 28, 2023, Barstool exercised its right under the Agreement to "suspend performance" in the form of advertising and sponsorships until it was paid. Defendants have not paid any portion of the outstanding $4,295,944.16 they owe nor indicated that they intend to do so.  For example, Barstool emailed O'Brien's counsel about payment in 2024 and then, when O'Brien's counsel stopped representing O'Brien in connection with this dispute, emailed O'Brien's principals, C. Patrick O'Brien and Shelley O'Brien, about payment earlier this year; O'Brien's principals did not respond.  Omega similarly has refused to pay any additional amounts to Barstool.[7]

### COUNT I

### Breach of Contract Against Omega

35.  Barstool hereby incorporates by reference all the foregoing allegations set forth above as if set forth fully herein.

36.  Barstool entered the Agreement dated December 9, 2022.  Omega authorized O'Brien to sign the Agreement as its agent, on Omega's behalf, and with Omega's knowledge, authority and consent, with Woods approving the Agreement on Omega's behalf in a December 8, 2022 email to O'Brien. (*See* Exh. B.)  O'Brien represented to Barstool, including in the

---

[7] Barstool is informed and believes, and based thereon alleges, that after freezing ERC payments in September 2023, the IRS started processing them again in October 2024, and that Omega has generated tens of millions of dollars in ERC commissions since then. Indeed, Omega's Director of Fulfillment represented in March 2025 that her team had "averaged $50 million in ERC credits for clients monthly" within the last six months. *See* Zakia Alameri, Director of Fulfillment, Omega Accounting Solutions, L.A. Times (Mar. 16, 2025).

Agreement, that it had the authority as Omega's agent to bind Omega to the Agreement, and that all of Omega's actions related to the Agreement would be within the scope of such agency. At all relevant times, Omega was aware of the services that Barstool was providing under the Agreement, did not contemporaneously claim that they were outside the scope of the Agreement or that O'Brien did not have authority to enter the Agreement on behalf of Omega and, to the contrary, Omega publicly promoted its partnership with Barstool after the parties executed the Agreement.

37.  Barstool performed its obligations under the Agreement through September 2023, including by providing Omega with the agreed-upon Deliverables for the period from approximately December 1, 2022 through September 2023 (such as by exclusively partnering with Omega on events and placing Omega's advertisements and sponsorships on Barstool content) and by being willing, if need be, to provide any "makegood" advertising and sponsorships.

38.  Omega materially breached its obligations under the Agreement, including under the Agreement's "TIMING/BILLING" provision and Section III(C) of the IAB Terms and Conditions, starting on or around March 31, 2023, including by not timely paying at least $3,221,452 of the invoiced amounts.

39.  As a result of Omega's material breaches of the Agreement, Barstool has suffered damages in the amount of at least $3,221,452 with statutory interest from the date of breach.

## COUNT II

### Quantum Meruit Against Defendant Omega

### (Pleaded in the Alternative to Count I)

40.  Barstool hereby incorporates by reference all the foregoing allegations set forth

above as if set forth fully herein.

41.  Barstool performed services in good faith for Omega, including by exclusively partnering with Omega on events and placing Omega advertisements and sponsorships in Barstool content from approximately December 2022 through September 2023.

42.  Omega was aware that Barstool was providing these services, accepted these services, and promoted its partnership with Barstool while these services were being provided.

43.  Barstool expected to be compensated for the services that it provided to Omega. Barstool has repeatedly demanded that Omega pay for these services; Omega has refused to do so.

44.  Barstool is informed and believes, and based thereon alleges, that the reasonable value of the services that it has provided to Omega totals at least $4,835,365, of which it has only been paid $425,507.84.  Barstool demands payment of at least $4,409,857.16 for the reasonable value of the services it provided with statutory interest from on or around March 31, 2023, the date it first demanded payment.

## COUNT III

## Breach of Contract Against O'Brien

45.  Barstool hereby incorporates by reference all the foregoing allegations set forth above as if set forth fully herein.

46.  Barstool entered the Agreement dated December 9, 2022.  Omega authorized O'Brien to sign the Agreement as its agent, on O'Brien's behalf, and with O'Brien's knowledge, authority and consent, with Woods approving the Agreement in a December 8, 2022 email to O'Brien.  O'Brien represented to Barstool, including in the Agreement, that it had the authority as Omega's agent to bind Omega to the Agreement, and that all of Omega's actions related to the

Agreement would be within the scope of such agency. At all relevant times, Omega was aware of the services that Barstool was providing under the Agreement, did not contemporaneously claim that they were outside the scope of the Agreement or that O'Brien did not have authority to enter the Agreement on behalf of Omega and, to the contrary, Omega publicly promoted its partnership with Barstool after the parties executed the Agreement.

47.  In accordance with Section III(c) of the IAB Terms and Conditions, O'Brien and Barstool agreed that Barstool shall "hold [O'Brien] liable for payments solely to the extent proceeds have cleared from [Omega] to [O'Brien] for Ads placed in accordance with the IO."

48.  On February 8, 2023, Omega wired O'Brien $1,764,705.88, of which O'Brien was required under Section III(c) of the IAB Terms and Condition to pay Barstool $1.5 million dollars for Barstool's performance under the Agreement in providing the Deliverables on Omega's behalf under the Agreement for the applicable time period. Instead, O'Brien only paid Barstool $425,507.84, failing and refusing to pay Barstool the remaining balance of $1,074,492.16 that O'Brien received from Omega even though O'Brien was required to do so under Section III(c) of the IAB Terms and Conditions. By engaging in this conduct, O'Brien materially breached its obligations under the Agreement, including Section III(c) of the IAB Terms and Conditions.

49.  As a result of O'Brien's material breach of the Agreement, Barstool has suffered damages in the amount of $1,074,492.16 with statutory interest from the date of the breach.

## PRAYER FOR RELIEF

WHEREFORE, Barstool prays for relief as follows:

1.      That the Court require Omega to pay Barstool:

a.    damages according to proof at trial for Barstool's Breach of Contract claim against Omega in an amount no less than $3,221,452 with statutory interest from the date of breach; and

b.    alternatively, damages according to proof at trial for Barstool's Quantum Meruit claim against Omega in an amount no less than $4,409,857.16 for the reasonable value of the services that Barstool provided Omega with statutory interest from the date Barstool first demanded payment.

2.    That the Court require O'Brien to pay Barstool damages according to proof at trial in an amount no less than $1,074,492.16 for Barstool's Breach of Contract claim against O'Brien with statutory interest from the date of breach.

3.    For costs of suit and other relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Barstool demands a jury trial on all issues.

Dated: August 27, 2025                LAW OFFICES OF DAVID C. BERG

By: _____

David C. Berg (DB 4089)
(davidberg@dberglaw.com)
425 Madison Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 829-0400, Ext. 104
Facsimile: (212) 753-3829

GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
Steven A. Stein (SStein@ggfirm.com)
(*pro hac vice to be submitted*)
2049 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: 310-553-3610
Facsimile: 310-553-0687

Attorneys for Plaintiff Barstool Sports, Inc.